**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JEFFREY A. CHANDLER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:17-CV-1477 NAB |
| | ) | |
| TROY STEELE, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Petition of Jeffrey Chandler ("Petitioner") for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Respondent Troy Steele has filed a response brief. (Doc. 10.) Petitioner did not file a reply and the time for doing so has passed. Both parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the petition for a writ of habeas corpus is denied.

**I.     Background**

In this case, Petitioner was charged by amended information with two counts of statutory sodomy in the second degree, one count of statutory rape in the second degree, and one count of incest. He waived his right to a jury trial and the case was bench-tried. Viewed in the light most favorable to the judgment, the following evidence was presented at Petitioner's bench trial[1]: T.C., who was born in 1992, is the biological daughter of Petitioner and his wife. T.C. has learning disabilities and an I.Q. of 58. Starting when T.C. was sixteen years old Petitioner began to have sexual intercourse with T.C. and also committed oral and anal sodomy, having her perform oral

---

[1] These facts are taken from the Missouri Court of Appeals' decision in Petitioner's direct appeal. (Resp't Ex. E). A state court's determination of a factual issue shall be presumed to be correct. 28 U.S.C. § 2254(e)(1).

1

sex on him until "white stuff would come out." Petitioner also touched T.C.'s genitals with his fingers. In January 2010, T.C. was upset and told the school nurse about the incidents with Petitioner. The school nurse called in the school counselor, Denise Richards ("Counselor"), who talked with her. T.C. told her that she was having a bad day because Petitioner had been making her lick on his "private parts." T.C. demonstrated what she meant to Counselor by licking a pen several times. T.C. also told her that Petitioner would sometimes put his fingers in her private area and would sometimes put his penis in her privates as well. T.C. cried while telling Counselor her story, and said that she had not told anyone earlier because she was afraid of Petitioner. Counselor called the abuse hotline and also called T.C.'s mother.

Deputy Erin Doherty and Lieutenant David Lingle of the Lincoln County Sheriff's Office responded to the call, bringing along a representative of the Children's Division of the Missouri Department of Social Services. T.C. told Deputy Doherty that Petitioner had sexual intercourse with her and that she performed oral sex on him at her home. Deputy Doherty and Lt. Lingle went to T.C.'s home and got consent to search the home from T.C.'s mother. They seized some sheets from the bedrooms, and Petitioner agreed to give a DNA sample. The sheet from T.C.'s bedroom had a semen stain with Petitioner's DNA.

T.C. was interviewed by Mindy Skaggs, a forensic interviewer ("Interviewer") at the Child Advocacy Center ("CAC") in Wentzville, Missouri. Interviewer estimated T.C.'s mental capacity to be that of a child of 10 to 12 years of age, and geared her questioning accordingly. T.C. told her that Petitioner raped her, explained what rape meant, and stated that he began doing it when she was 14 years old. She also told her that Petitioner touched her breasts and put his finger in her vagina, and that something sexual happened every day. A SAFE examination was performed on T.C. by Lori Sievers, a nurse practitioner ("Nurse"). T.C. told her that Petitioner would tell her

when he wanted sex and that he would put his penis in her vagina or rectum. Nurse estimated that T.C. had a mental age of roughly 12 to 13 years old.

Prior to Petitioner's trial, on January 4, 2011, the probate court of Lincoln County entered a judgment that T.C. was incapacitated and disabled. The Lincoln County Public Administrator, Betty Cox ("Administrator"), was appointed as her guardian. T.C. was placed in a group home for her safety, where she remained under supervision, and she continued her education.

Based in part on the guardianship and the probate court's decision, the State filed a pre-trial motion seeking to admit T.C.'s out-of-court statements pursuant to section 491.075. Section 491.075 provides, in part, that:

> 1. A statement made by a child under the age of fourteen, or a vulnerable person, relating to an offense under chapter 565, 566, 568, or 573, performed by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:
> (1) The court finds, in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and
> (2)(a) The child or vulnerable person testifies at the proceedings; or
> …
> 5. For the purposes of this section, "vulnerable person" shall mean a person who, as a result of an inadequately developed or impaired
> intelligence or a psychiatric disorder that materially affects ability to function, lacks the mental capacity to consent, or whose developmental level does not exceed that of an ordinary child of fourteen years of age.

The trial court held a hearing on this motion, at which the State introduced T.C.'s school records ("Pretrial Exhibit 1"), which included her Individualized Education Plan ("IEP"), and the certified documents of the guardianship of T.C. in Lincoln County ("Pretrial Exhibit 2"). The State also called Administrator as a witness at the hearing. Petitioner's counsel introduced the medical records from Barnes-Jewish Hospital from T.C.'s examination ("Defendant's Exhibit A"). The State argued that the Lincoln County Probate Court had already determined that T.C. was

3

incapacitated and disabled, and that the IEP indicated that her intellectual state was that of a "vulnerable person" under section 491.075. Defense counsel argued that the records indicated otherwise and that the State failed to prove that T.C. was a "vulnerable person" and needed to introduce expert evidence if it wished to establish that. On January 24, 2013, the trial court ruled that T.C. was a "vulnerable person" as defined in Section 491.075.

The case proceeded to trial on March 21, 2013. Administrator, T.C., Counselor, Deputy Doherty, Interviewer, Lt. Lingle, and Nurse testified. Stacy Bolinger, of the Missouri Highway Patrol Crime Laboratory testified about the DNA testing. T.C.'s brother and mother also testified at trial. The State introduced a number of exhibits into the record, and the Petitioner introduced Exhibit A. After Petitioner was convicted on all four counts, the trial court sentenced Petitioner to three consecutive terms of seven years' imprisonment for Counts I through III, and to a concurrent term of four years' imprisonment on Count IV.

In his direct appeal, Petitioner raised one claim: that the trial court abused its discretion in overruling his objections to the alleged hearsay testimony of Counselor, Nurse, and the DVD of the CAC interview introduced through interviewer. He argues this violated his constitutional rights to confrontation and to a fair trial in that these statements were admitted under section 491.075 as "made by a vulnerable person" and that T.C. did not meet the statutory definition of "vulnerable person." Resp't Ex. B, at 10-17. The Missouri Court of Appeals considered the claim on the merits and denied the same. Resp't Ex. E, at 5-6.

Petitioner filed a *pro se* motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, counsel was appointed, and Petitioner filed an amended motion for post-conviction relief under Rule 29.15. Resp't Ex. G, at 9. The motion court held an evidentiary hearing and denied Petitioner's motion for post-conviction relief. Resp't Ex. G, at 9-10. On appeal,

4

Petitioner raised one claim: ineffective assistance of trial counsel for failure to object under *Missouri v. Seibert*, 542 U.S. 600 (2004) to a police detective's trial testimony that he did not believe Petitioner's denials of committing the charged offenses because his "micro-gestures" during interrogation indicated he was not telling the truth. Resp't Ex. I, at 1-2. The Missouri Court of Appeals denied the claim on the merits. Resp't Ex. I, at 2.

Petitioner asserts two claims in the present § 2254 habeas petition: (1) that trial counsel was ineffective for failing to object when the police detective testified that he did not believe Petitioner's denials of committing the charged offenses because his "micro-gestures" during interrogation indicated he was not telling the truth; (2) that the trial court erred in admitting hearsay evidence under Missouri Revised Statute Section 491.075.[2]

## II.   Standard of Review

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law. Judges must be vigilant and independent in reviewing petitions for the writ, a commitment that entails substantial judicial resources." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). "In general, if a convicted state criminal defendant can show a federal habeas court that his conviction rests upon a violation of the Federal Constitution, he may well obtain a writ of habeas corpus that requires a new trial, a new sentence, or release." *Trevino v. Thaler*, 569 U.S. 413, 421 (2013). The Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA) applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-29 (1997). In conducting

---

[2] Petitioner's Ground Two refers to RSMo § 475.078.2, not § 491.075. (Doc. 1, at 6.) Respondent's brief suggests the relevant statute sections are § 491.075 and § 497.075. (Doc. 10, at 3.) However, a full review of the Petition and Respondent's exhibits suggests that Petitioner's reference to § 475.078.2 and Respondent's reference to § 497.075 were inadvertent. Section 491.075 is the relevant statute utilized by the trial court and Missouri Court of Appeals, and Ground Two should be characterized as stated above.

habeas review pursuant to 28 U.S.C. § 2254, a federal court is limited to deciding whether a claim that was adjudicated on the merits in state court proceedings "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

For purposes of § 2254(d)(1), the phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). "In other words, 'clearly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id.* at 71-72. To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or unreasonably applied. *Buchheit v. Norris*, 459 F.3d 849, 853 (8th Cir. 2006).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal rule but applies it unreasonably to the facts

6

of a particular prisoner's case. *Id.* (citing *Williams*, 529 U.S. at 407-408). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 793 (citing *Williams*, 529 U.S. at 409). "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Evenstad v. Carlson*, 470 F.3d 777, 782 (8th Cir. 2006). Clear and convincing evidence that state court factual findings lack evidentiary support is required to grant habeas relief.  28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 558 U.S. 290, 293 (2010). A "readiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). AEDPA's highly deferential standard demands that state court decisions be given the benefit of the doubt. *Id.*

## III.   Discussion

### A. Ground One: Ineffective Assistance of Counsel—Trial Counsel's Failure to Object to Detective Testimony Regarding Petitioner's "Micro-Gestures"

In Ground One, Petitioner argues that his trial counsel was ineffective based on the failure to object under *Missouri v. Seibert,* 542 U.S. 600 (2004) to the police detective's testimony at trial that he did not believe Petitioner's denials of committing the charged offenses because of his "micro-gestures" during interrogation that indicated he was not telling the truth. After his trial, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, counsel was appointed, and Petitioner filed an amended motion for post-conviction relief under Rule 29.15, arguing trial counsel was ineffective for failure to object to the detective's testimony. Resp't Ex. G, at 9. The motion court held an evidentiary hearing at which Petitioner's trial attorney testified. *Id.* The motion court denied Petitioner's motion for post-conviction relief.

Resp't Ex. G, at 9-10. Petitioner raised this claim again in the appeal from the denial of post-conviction relief, and the Missouri Court of Appeals denied in on the merits. Resp't Ex. I.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his attorney failed to exercise the degree of skill and diligence a reasonably competent attorney would exercise under similar circumstances, and additionally, the petitioner must show that she was prejudiced by her attorney's action or inaction. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner must show that "counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment." *Id.* "Prejudice" is shown by a petitioner when it is demonstrated that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. *Id.* The petitioner must not only assert prejudice but must affirmatively prove that prejudice was present. *See id.* at 693.

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper,* 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 201 (2011)). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance." *Bell v. Cone,* 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

A federal habeas court need not address the prejudice prong if the attorney's performance was not deficient. *See Parkus v. Bowersox*, 157 F.3d 1136, 1140 (8th Cir. 1998). Likewise, a federal habeas court need not address counsel's allegedly deficient performance if the petitioner

has failed to show prejudice. *See Strickland*, 466 U.S. at 697; *Williams v. Locke*, 403 F.3d 1022, 1025 (8th Cir. 2005).

Importantly, an attorney does not provide ineffective assistance of counsel by failing to pursue an action that lacks merit. *McReynolds v. Kemna*, 208 F.3d 721, 724 (8th Cir. 2000) (discussing an attorney's failure to present a Confrontation Clause challenge to admitted testimony that was "unlikely to succeed"); *accord Dodge v. Robinson*, 625 F.3d 1014, 1019 (8th Cir. 2010) (finding counsel's failure to present a double jeopardy objection to a sentence did not constitute ineffective assistance because the objection lacked merit); *Thai v. Mapes*, 412 F.3d 970, 979 (8th Cir. 2005) (finding a trial attorney "was not ineffective for failing to make" a "factually meritless" argument); *Gray v. Bowersox*, 281 F.3d 749, 756 n.3 (8th Cir. 2002) (noting that "a claim of ineffective assistance [of counsel] is not viable" where the attorney's omitted objection to evidence and argument "would have been without merit").

Petitioner argued that his trial counsel's failure to object to the detective's testimony based on a *Seibert* challenge rendered trial counsel ineffective. Both the motion court and the Missouri Court of Appeals found that *Missouri v. Seibert* was distinguishable and did not support Petitioner's ineffective assistance claim. Resp't Ex. F, at 4; Resp't Ex. I, at 3.

In assessing the merits of Petitioner's claim, the Missouri Court of Appeals reviewed *Seibert,* and explained why *Seibert's* holding does not support Petitioner's argument. Resp't Ex. I, at 3. In *Seibert*, the United States Supreme Court held that the giving of *Miranda* warnings mid-interrogation, after the defendant gave a confession, was ineffective under the circumstances, and therefore the "post-warning statements" were inadmissible at trial. *Missouri v. Seibert*, 542 U.S. 600, 616–17 (2004) (plurality opinion). There, the police used a particular two-step interrogation technique in a calculated way to undermine the *Miranda* warnings. *Id.* at 621.

In the two-step interrogation, the police first question defendant without and then with *Miranda* warnings, each time eliciting the same statement. *Id.*

Here, after Petitioner was arrested, he was questioned by a police detective both before and after he received *Miranda* warnings. Resp't Ex. I, at 4. Prior to giving the warnings, the detective spent approximately fifteen to twenty minutes asking Petitioner questions about his background, employment, and family dynamics. *Id.* When the detective did give Petitioner the *Miranda* warnings, Petitioner signed a form stating that he understood his *Miranda* rights and elected to waive them. After Petitioner waived his *Miranda* rights, the detective began to question Petitioner about the allegations against him. *Id.*

At trial, the prosecutor asked the detective to describe his interview with Petitioner:

PROSECUTOR: How did your interview with the defendant begin?
DETECTIVE: Basically Mr. Chandler's demeanor was very calm and just nonchalant. In regards to that, basically denied allegations once we got into what the allegations were. Every time I would bring a specific allegation up, he would deny it. And then as I would follow up with it, he—Mr. Chandler would make micro-gestures.

Petitioner's counsel objected to the detective's testimony on the grounds that there was "no foundation laid that [the detective] [was] an expert in any kind of micro-gestures or hidden body language or anything of that nature." The prosecutor responded that the detective was testifying merely "as to what he personally observed," and the trial court overruled defense counsel's objection. The prosecutor then continued with the detective:

PROSECUTOR: Sir, as part of your training, and particularly in the training that you just referenced, do you learn about verbal and nonverbal cues?
DETECTIVE: Yes, sir.
PROSECUTOR: Can you explain the difference between the two?
DETECTIVE: Verbal and nonverbal, basically when you ask a question, basically if someone that is deceptive would pause, repeat the question. Basically what that tells us in our mind is that they're trying to come up with an answer or trying to come up with a different answer than what their brain already knows is the truth.

10

> Nonverbal is basically movements of their body, how they position themselves, how they adjust themselves, and that's all part of the rapport building. What we're establishing when we're doing the nonchalant and nonstress questions is we're establishing what their baseline is, basically what their body mechanics are, how they're sitting, this, that, and the other. And then what we're trained to do is notice it when we ask a stress question, how their body changes when we ask that hot question, basically what they do, basically it's their tell.
> PROSECUTOR: Okay. And how did Mr. Chandler react to a stress question—generally?
> DETECTIVE: Generally he would nod his head up and down.
> PROSECUTOR: Can you indicate how—what you mean by that?
> DETECTIVE: Basically he would say no, but he would nod his head up and down, which is a micro-gesture telling us that, yes.

Resp't Ex. I, at 4-5.

The Missouri Court of Appeals explained why, based on the detective's testimony regarding his interview with Petitioner, a *Seibert* objection would not have been successful:

> Most important, in this case Chandler admits that there is no evidence that the police detective who interrogated him used the two-step interrogation technique condemned in *Seibert*. Chandler simply argues that the interrogation techniques the detective did use had the same *effect* on his understanding of his *Miranda* rights. But not even that much is true. Unlike the two-step interrogation in *Seibert*, the detective's questioning in this case did not deprive Chandler of a free and rational choice whether to exercise his *Miranda* rights, *see Seibert*, 542 U.S. at 611 (plurality opinion) *("Miranda* addressed 'interrogation practices ... likely ... to disable [an individual] from making a free and rational *choice'* about speaking, and held that a suspect must be 'adequately and effectively' advised of the choice the Constitution guarantees." (quoting *Miranda*, 384 U.S. at 464-65, 467) (emphasis added)), and thus no unconstitutional coercion resulted here.

Resp't Ex. I, at 4. Petitioner argued the detective unconstitutionally coerced him under *Seibert* by reusing what was learned during the pre-warning stage to get Petitioner to incriminate himself after the *Miranda* warnings. The Missouri Court of Appeals found that no such coercion took place, as Petitioner "had no reason to suspect that during the pre-warning questioning, the detective was drawing any particular conclusions about [Petitioner's] body language while speaking, such as that [Petitioner] keeping his head still while answering a question meant that he was telling the truth." Resp't Ex. I, at 6. Thus, it follows that after he was Mirandized, Petitioner had no reason to feel

pressured by the detective to use particular body language when denying that he committed criminal offenses. *Id.* The Missouri Court of Appeals also noted that it agreed with the court's Western District opinion holding that *Seibert* is "inapplicable" and does not call for the suppression of evidence obtained where during the pre-waiver background questions, defendant does not make any allegedly incriminating statements prior to receiving the *Miranda* warnings. *See State v. Hughes*, 272 S.W.3d 246, 255 (Mo. App. W.D. 2008) ("Unlike *Seibert...* this is not a case where Hughes was questioned concerning the circumstances of the offense, then advised of his rights and simply urged to repeat incriminating statements he had previously made.").

Under this Court's highly deferential review of the record, the undersigned concludes that the Missouri Court of Appeals' decision affirming the denial of Petitioner's claim that his trial attorney provided ineffective assistance of counsel in failing to raise a *Seibert* challenge during the detective's testimony regarding his interrogation of Petitioner, is neither contrary to, nor an unreasonable application of, *Strickland*. Additionally, the Missouri Court of Appeals' description of the facts is fully supported by the trial transcript and the motion court's decision. *See* Resp't Ex. A, at 212-213; Resp't Ex. F, at 19-21. Thus, the decision does not involve an unreasonable determination of the facts in light of the evidence presented. The Court will deny habeas relief on this claim.

## B. Ground Two: Trial Court Error—Overruling Objection to Alleged Hearsay Testimony

In Ground Two, Petitioner argues that the trial court abused its discretion in overruling defense counsel's objection to the admission of out-of-court statements made by T.C. under Missouri Revised Statute § 491.075. He contends admitting the statements is unconstitutional under both Mo. Const. art. I, §§ 10, 18(a) and under the United States Constitution. Petitioner first raised the issue in opposition to a pretrial motion and later raised it on direct appeal.

This Court will not second guess the state court's determination that the admission of T.C.'s out-of-court statements was valid under section 491.075 or under the Missouri Constitution. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 63 (1991). Pursuant to section 491.075, the trial court uses a totality of the circumstances test to determine whether the child's out-of-court statement is sufficiently reliable to admit at trial. *State v. Sprinkle*, 122 S.W.3d 652, 661 (Mo. App. W.D. 2003). Under this test, the courts consider numerous non-exclusive factors including: (1) spontaneity and consistent repetition; (2) the child's mental state; (3) whether or not the child had a motive to fabricate the statement; (4) the child's knowledge of the subject matter of the statement; and (5) the lapse of time between when the sex acts occurred and when the child reported them. *Id.*

The trial court conducted a pretrial hearing to determine if the statements were reliable and found they were made under sufficiently reliable circumstances to be admissible under section 491.075. Resp't. Ex. A, at 13-26. The Missouri Court of Appeals reviewed the trial court's reliability analysis and found that the court did not abuse its discretion in admitting the hearsay testimony. Resp. Ex. E at 5-6. This Court will not second guess a state court's determination of an issue of state law.

Petitioner also contends that the introduction of the out-of-court statements violated his rights to due process and confrontation under the United States Constitution. Federal courts will reverse a state court's evidentiary ruling only if Petitioner cites errors that are "so egregious that they fatally infected the proceedings and rendered [petitioner's] entire trial fundamentally unfair." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995). Petitioner has failed to meet his high burden. The Court cannot say the trial court erred in admitting the out-of-court statements.

"Rulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation." *Nebinger v. Ault*, 208 F.3d 695, 697 (8th Cir. 2000).

 Section 491.075 has repeatedly been found constitutional under the Missouri constitution. *See State v. Biggs*, 333 S.W.3d 472 (Mo. 2011). The United States Supreme Court has held that "statements by very young children will rarely, if ever, implicate the Confrontation Clause." *Ohio v. Clark*, 576 U.S. 237, 247-48 (2015). Furthermore, "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Crawford v. Washington*, 541 U.S. 36, 59 n. 9 (2004).

Here, T.C. testified at the trial, thus eliminating the Confrontation Clause concern, and both the trial court and Missouri appellate court found her statements were made with sufficient indicia of reliability to be introduced at trial. Additionally, the Missouri appellate court found that "T.C.'s testimony alone was sufficient for the trial court to convict [Petitioner] on all four counts." Resp't Ex. E, at 6. Thus, even assuming *arguendo* that the admission of the evidence was erroneous, Petitioner cannot show he was prejudiced because T.C.'s out of court statements were not outcome determinative. *See id.* (citing *State v. Crews,* 406 S.W.3d 91, 94-95 (Mo. App. 2013) ("even if the court erred in admitting the hearsay evidence, in a judge tried case, we presume that the trial judge was not prejudiced by inadmissible evidence and was not influenced by it in reaching a judgment unless it is clear from the record that the trial judge considered and relied upon the inadmissible evidence")). The introduction of these statements did not violate Petitioner's constitutional rights. Accordingly, Ground Two will be denied.

## IV.    Conclusion

Based on the foregoing, the Court finds that Petitioner's request for relief pursuant to 28 U.S.C. § 2254 should be denied. The Court finds that the state court's findings and conclusions

regarding Petitioner's claims were not contrary to, nor do they involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Further, because Petitioner has made no showing of a denial of a constitutional right, the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the Petition of Jeffrey A. Chandler for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED. (**Doc. 1.)

**IT IS FURTHER ORDERED** that a separate judgment will be entered this same date.

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Jeffrey A. Chandler for a Certificate of Appealability will be **DENIED**.

So Ordered this 16th day of November, 2020.

_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE